PIGEON v. HILL et al.

No. 31403. April 4, 1944.

*147 P. 2d 453.*

White & White, of Eufaula, for plaintiff in error.

E. C. Hopper, of Eufaula, for defendants in error.

BAYLESS, J. Arspella Pigeon sued James H. Hill on a mortgage debt, and Mandy Phillips, nee Hill, his daughter, to quiet title to real estate, and when the district court of McIntosh county sustained their demurrer to his petition as amended, the said demurrer raising the issues of a general demurrer and the statute of limitations, Pigeon appealed.

The petition alleged, in substance: (1) That prior to January 9, 1932, Hill was guardian of Pigeon; (2) that on or about that date Hill filed his final account showing he owed Pigeon $605.54, and this account was approved and the guardianship account settled on that basis; (3) that Hill proposed to the county court to settle his obligation to his ward, and thus to procure the release of his bond, by paying the ward $85 in cash and executing notes for $250 and $270.54, secured by a mortgage on real estate, said notes to become due in one and two years, respectively, and that the county court permitted the account to be paid in this manner; (4) that Hill paid Pigeon $85 in cash; (5) that Pigeon is a full blooded Creek Indian, who understands very little English, and is illiterate, and without understanding of the effect of notes and mortgages or of the settlement of his affairs with his guardian; (6) that Hill, after exhibiting the notes and mortgage to the county judge, resumed possession of them, and caused the mortgage to be recorded, and held and retained possession of the notes; (7) that Pigeon has never seen the notes and mortgage since they were exhibited at the hearing in the county court, and did not know of their purport or meaning until about May 1, 1942, when Hill told him that he, Pigeon, had some claim upon some land of his, Hill's, but that "It had been more than five years" and there was nothing Pigeon could do to enforce the claim, and offered him $40 cash for a release; (8) that Pigeon immediately consulted an attorney to learn the nature of his rights, and that prior to May 1, 1942, he had never known that he was the owner and holder of said promissory notes and mortgage; and, in a second cause of action, it was alleged that about May 20, 1942, Hill executed and delivered to his daughter a quitclaim deed to the real estate, but that said deed was without consideration and given for the purpose of defrauding Pigeon.

When the trial court sustained a demurrer, upon the grounds above stated, to the petition, Pigeon filed an amendment to the petition. In this amendment he charged Hill with a specific act of misrepresentation that misled him and prevented him from making an inquiry regarding the note and mortgage, and that by reason of the confidence Pigeon had in Hill he relied on the truth of the matter stated. He alleged that Hill misrepresented to him the state of the matter by taking him outside the courthouse and paying him the $85 out of the presence of the county judge and telling him that the $85 was all that was due under the settlement and that the payment

of that sum completely settled the account of Hill to him.

Pigeon argues that the nature of the allegations are such that the trial court could have sustained the demurrer to the petition as amended only on the theory that the action was barred by the statute of limitations. Defendants dispute this by asserting that the trial court could well have thought there was a failure to state facts to constitute a cause of action as well as a failure to state facts that tolled the statute of limitations. However, defendants do not particularly argue this point and spend virtually all of their brief refuting Pigeon's argument on the issue of the statute of limitations. We are of the opinion that the petition was good as against a general demurrer, and that the trial court undoubtedly intended to hold that the action was barred. We therefore pass to a consideration of that issue.

Was the petition as amended demurrable? We are of the opinion it was not.

Defendants argued below and make the same argument here, that is: The petition as amended fails to allege more than mere concealment or mere failure to disclose the right of action (Kansas City Life Ins. Co. v. Nipper, 174 Okla. 634, 51 P. 2d 741; and the records constituted constructive notice to Pigeon (Caraway v. Overholser, 182 Okla. 357, 77 P. 2d 688), and because of this Pigeon failed to plead facts sufficient to bring himself within 12 O. S. 1941 § 95 (3). In other words, defendants argue that they are not charged with having prevented Pigeon's discovering his right of action and the public records constituted notice to him, so that his allegation that he based his right of action on the notes and mortgage on fraud discovered within two years prior to the institution of the action is not sufficient in law.

Without passing on whether the petition as originally filed was demurrable for these reasons, an issue not before us, we are of the opinion that if it was, the allegations of the amendment to the petition sufficed to cure the defect. As pointed out, the amendment contained the specific allegation of misrepresentation that was relied on to prevent further inquiry. This was held by us in Loyal Protective Ins. Co. v. Shoemaker, 178 Okla. 612, 63 P. 2d 960, to be sufficient to toll the statute of limitations where the person so misled had the papers in his possession to show otherwise. We said:

"Mere failure to disclose such material facts is not sufficient to prevent the running of the statute; but when there is something more than mere failure to disclose, when there is some actual artifice or some affirmative act of concealment, or some misrepresentation which induces the other party to inaction, or to forego inquiry, the guilty party may not cover up the harm he has thus wrought, by aid of the statute of limitations."

It will be observed from reading the foregoing decision and the authorities on which it is based that while the courts recognize that constructive notice from public records as well as the opportunity to learn otherwise from writings in the person's possession, are strong circumstances against such persons claiming to be defrauded, nevertheless, when the person charged with having misled such persons by misrepresentation that is relied upon to the extent of stifling inquiry, the notice that could be obtained from such sources and which is usually imputed to the person complaining of the fraud loses its controlling force. It is the active element of concealment or encouragement to the defrauded person to not resort to inquiry at sources which would disclose the truth that is held against the person charged with perpetrating the fraud. Thus, when the person charged with fraud has passed from a state of mere silence or inactivity to the stage of activity by misrepresentation, that factor then becomes vital and controlling.

When it is considered that the rule applicable to demurrers to pleadings is that the demurrer has the effect of admitting, for the purpose of the demur-

rer only, the truth of all matters well pleaded as well as the truth of the reasonable or logical inferences deducible therefrom, the rather comprehensive and particular allegations of the petition as amended have a broad scope. When the points of the plaintiff's petition as amended, as outlined above, are considered in the light of the defendants' admission that they as well as the logical inference they support are true, we are of the opinion that they are sufficient to charge fraud discovered within two years of the filing of action.

The judgment of the trial court is reversed and the cause is remanded to take further proceedings not inconsistent with the views herein expressed.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.