**TOWN OF NEW CASTLE, Plaintiff,**

v.

**YONKERS CONTRACTING COMPANY, INC.; County Asphalt, Inc.; Peckham Materials Corp.; Westchester Colprovia Corporation; Putnam Asphalt Corp.; Nigro Bros. Inc.; Area Paving Corp.; Edward J. Petrillo, Jr.; Frank D. Cooney, Jr.; William A. Bassett; Anthony B. Cahill; Peter Nigro; August Nigro; and Matthew N. Mauriello, Defendants.**

No. 88 Civ. 2952 (CES).

United States District Court, S.D. New York.

April 9, 1990.

Kaplan & Kilsheimer by Robert Skirnick, New York City, for Town of New Castle.

Cornelia Mogor, Berman, Paley, Goldstein & Berman, New York City, for Yonkers Contracting.

James P. Donohue, Jr., Marchi Jaffe Steinberg Crystal Katz & Burke, New York City, for County Asphalt & Frank D. Cooney, Jr.

John J. Quinn, Alan R. Kusinitz, Kelley Drye & Warren, New York City, for Peckham Materials.

Rodney O. Thorson, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., for Westchester Colprovia.

Walter A. Kretz, Jr., Scoppetta & Seiff, New York City, for Putnam Asphalt Corp. and Anthony B. Cahill.

Harry First, Charles Miller, Loeb and Loeb, New York City, for August Nigro and Peter Nigro.

Eugene Schaffel, Buckley, Treacy, Schaffel, Mackey & Abbate, New York City, for Nigro Bros.

William M. Brodsky, Marilyn Go, Baden Kramer Huffman & Brodsky, New York City, for Edward J. Petrillo.

Timothy Bloomfield, Jeffrey R. McFadden, Dunnells, Duvall, Bennett & Porter, Washington, D.C., for William Bassett.

Susan G. Kellman, New York City, for Mathew N. Mauriello and Area Paving.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff, Town of New Castle ("New Castle"), brought this action against seven corporate defendants and seven individual defendants (collectively, the "Asphalt Companies") alleging that they violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to restrain trade and competition in the sale and application of asphalt in Westchester County.[1] New Castle, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure ("Rule 23"), seeks to represent a class consisting of "the County of Westchester and all cities, towns, villages and other local governmental entities which purchased asphalt or asphalt and its application directly from one or more of the defendants at any time during the period from January 1, 1970 through December 31, 1985."[2]

---

1. Section 1 of the Sherman Act reads in relevant part, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be il-

legal...." Section 4 of the Clayton Act, 15 U.S.C. § 15, permits individuals to bring suits for antitrust violations.

2. Fed.R.Civ.P. 23 reads in relevant part:

■ In determining whether to certify a case as a class action, a court may only determine whether the requirements of Rule 23 have been met. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). We turn, therefore, to the contentions of the parties.

Defendants, in opposition to the motion, primarily argue that class certification is inappropriate since two major elements required under Rule 23(a)(1) and (b)(3) are lacking—the proposed class must be so numerous so as to make joinder of all members impracticable ("numerosity") and the predominance of common issues over individual ones.

*Numerosity*

■ In determining whether the numerosity requirement is met, a court should depend upon the circumstances surrounding a case rather than "mere numbers" to determine whether joinder is impracticable. *See DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968).[3] Nevertheless, numbers are one factor to be weighed pursuant to Rule 23(a)(1). Plaintiff asserts that the proposed class will number about 36. According to Professor Moore, while there is no hard and fast rule, there are observable general tendencies:

> While there are exceptions, numbers under twenty-one have generally been held to be too few. Numbers between twenty-one and forty have evoked mixed responses and again, while there are exceptions, numbers in excess of forty, partic-

ularly those exceeding 100 or 1,000 have sustained the requirement.

3B Moore's Federal Practice, ¶ 23.05 (1987); *see also Davis v. Northside Realty Associates, Inc.*, 95 F.R.D. 39, 43 (N.D.Ga.1982) (if class has more than 40 people in it then numerosity is satisfied; less than 25 people in it, numerosity is lacking) (quoting A. Miller, An Overview of Federal Class Actions: Past, Present and Future (1977)); *Fifth Moorings*, 81 F.R.D. at 715 (if class exceeds 40 people there is sufficient numerosity under the Rule).

■ Thus, the instant number of potential class members hovers near the number which most generally agree will satisfy the numerosity requirement. Indeed, even the Second Circuit has stated that there is "little doubt" that a group of 42 New York State county sheriffs satisfied the numerosity requirement of Rule 23(a)(1). *Marcera v. Chinlund*, 595 F.2d 1231, 1238 (2d Cir.1979), *vacated on other grounds*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979). District courts in this circuit have not been uniform in construing the numerosity requirement as applied to groups of approximately the size of the instant putative class. *See, e.g., United States ex rel. Walker v. Mancusi*, 338 F.Supp. 311, 315–16 (W.D.N.Y.1971), *aff'd*, 467 F.2d 51 (2d Cir.1972) (proposed class of 38 prison inmates considered sufficient to satisfy numerosity requirement); *Fidelis Corporation v. Litton Industries, Inc.*, 293 F.Supp. 164, 170 (S.D.N.Y.1968) (35–70 potential plaintiffs sufficient to satisfy numerosity requirement); *cf. Dannenberg v. Dorison*,

---

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.\* \* \* \* \* \*

(3) the court finds that questions of law or fact common to members of the class pre-

dominate over any questions affecting only individual members, and that a class action is superior to other available methods....

3. Impracticability as used in Fed.R.Civ.P. 23(a)(1) has been defined as "impractical," "imprudent" or "unwise" rather than "incapable of being performed." *See Goldstein v. North Jersey Trust Company, Inc.*, 39 F.R.D. 363, 367 (S.D.N.Y.1966); *cf. Fifth Moorings Condominium, Inc. v. Shere*, 81 F.R.D. 712, 716 (S.D.Fla.1979) (impracticable does not mean impossible, only difficult or inconvenient).

603 F.Supp. 1238, 1243 (S.D.N.Y.1985) (potential class of 33 or less may "marginally" meet numerosity requirement); *but see Strykers Bay Neighborhood Council v. City of New York*, 695 F.Supp. 1531, 1537–38 (S.D.N.Y.1988) (joinder not impracticable for 32 families in proposed subclass); *In the Matter of Shulman Transport Enterprises*, 33 B.R. 383, 386 (S.D.N.Y.1983), *aff'd*, 744 F.2d 293 (2d Cir.1984) (40 potential class members did not satisfy numerosity requirement). Although there is no consensus regarding whether a potential class of 36 satisfies the numerosity requirement, we are in agreement with the wise district court judge in the Northern District of Illinois who, upon considering whether the numerosity requirement was met in a case which involved about 35 potential class members, stated, "[the impracticability of joinder] is best seen by noting the difficulties involved in having thirty-five intervenors, all with their respective attorneys, attempt to go through the formal motions required for entrance into and participation in the suit." *Butkus v. Chicken Unlimited Enterprises, Inc.*, 1971 Trade Cas. (CCH) ¶ 73,780, at 91,291, 1971 WL 582 (N.D.Ill. November 5, 1971); *cf. Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa. 1968) ("While 25 is a small number … it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits, if one will do."). Accordingly, we believe that the size of the potential group of plaintiffs and the inconvenience of litigation weigh in favor of class certification. *Cf. MacNeal v. Columbine Exploration Corp.*, 123 F.R.D. 181, 185 (E.D.Pa.1988) (impracticability is subjective determination based on number, expediency and inconvenience of trying individual suits) (citing *Alvarez v. City of*

*Philadelphia*, 98 F.R.D. 286, 292 (E.D.Pa. 1983)).

Another factor to be considered is the nature of the action. *See Fifth Moorings*, 81 F.R.D. at 716 (citing *Davy v. Sullivan*, 354 F.Supp. 1320, 1325 (D.Ala.1973)). Since private enforcement of antitrust laws provides a supplement to governmental enforcement, it is our view that class action treatment of alleged antitrust violations is appropriate and desireable. *Cf. Cumberland Farms, Inc. v. Browning–Ferris Industries, Inc.*, 120 F.R.D. 642, 645 (E.D.Pa. 1988) ("[I]n an alleged horizontal price-fixing conspiracy case when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class."). Accordingly, for the reasons articulated, we find that the numerosity requirement is satisfied.[4]

*Rule 23(b)(3)*

 In addition to the prerequisites of Rule 23(a), a proposed class representative must also satisfy one or more of the requirements of Rule 23(b). Defendants contend that although the existence of a horizontal conspiracy presents a common issue, it does not predominate as required by (b)(3) since there are individual issues of damage as to each municipality, as well as claims of fraudulent concealment which require individualized findings.

We find defendants' first argument without merit. First, a jury may conclude that defendants' conduct caused impact or injury to each class member if it is established at trial that defendants engaged in an unlawful conspiracy which had the effect of stabilizing prices above competitive levels and that the plaintiffs were consumers of that product. *See In re Master Key Antitrust Litigation*, 528 F.2d 5, 12 n. 11 (2d Cir.1975).

---

4. Defendants do not vigorously contest that the other prerequisites under Rule 23(a) are lacking. They challenge primarily the requirements under Rule 23(a)(1) and (b)(3). Nevertheless, we find that the other prerequisites under Rule 23(a)—commonality, typicality, and adequate representation—have been met.

We agree with plaintiffs that the issue of the existence and effect of an antitrust conspiracy involves common questions of law and fact. In addition, we find that plaintiff's rights to recovery are based upon the same legal theory as that of those it wishes to represent—i.e. that they were injured by defendants' alleged conspiracy in violation of antitrust laws. Finally, we find that plaintiffs are represented by able counsel and have no interests antagonistic to other potential class members.

■ Second, as cogently pointed out by Judge Sifton in *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 327 (E.D.N.Y. 1982), "the fact that each class member's damages will be different and, thus, will require individualized treatment does not prevent one from concluding that common questions predominate." We agree with Judge Sifton that to accept such an argument uncritically would leave "little if any place for the class action device in the adjudication of antitrust claims." *In re Alcoholic Beverages*, 95 F.R.D. at 327–28 (quoting *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 37 (S.D. N.Y.1977), *appeal dismissed*, 574 F.2d 656 (2d Cir.1978)). Indeed, the predominance requirement does not require that only common questions exist, only that they predominate. *See Shelter Realty Corp.*, 75 F.R.D. at 37 ("The predominance requirement calls only for predominance, not exclusivity, of common questions.").

Defendants' reliance on *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978), to support its position that individualized damage considerations will predominate over common questions of horizontal conspiracy is misplaced. In *Windham*, the Fourth Circuit expressly stated that issues of damage and impact predominate when there are "an overwhelming large number of individual claims [creating] staggering problems of logistics." *Windham*, 565 F.2d at 66. Clearly, no such difficulty is presented with regard to the instant suit.

Finally, since Rule 23(c)(1) allows an order granting class certification to be conditional and Rule 23(c)(4) permits class certification only as to particular issues, we see no difficulty should damage calculations prove difficult without individualized determinations, to later decertify the class as to damages.[5] *See Herrmann v. Atlantic Richfield Company*, 65 F.R.D. 585, 593 (E.D.Pa.1974) ("[T]he Court need only look to whether each and every factual and legal issue in a purported class action is raised by class representatives in order to determine the propriety of class certification, as long as the option of decertification of the class as to damages is open to it.").

Defendants next argue that the issue of fraudulent concealment raised in this case raises individual issues which would preclude class treatment. Fraudulent concealment raises both common and individualized questions of fact. It requires a plaintiff to prove three elements: (1) that it lacked knowledge of its cause of action; (2) that the defendant committed an affirmative act of concealment; and, (3) that diligence on the plaintiff's part would not have uncovered the cause of action. *See Glazer Steel Corp. v. Toyomenka, Inc.*, 392 F.Supp. 500, 503 (S.D.N.Y.1974).

There is no agreement among courts as to whether the issue of fraudulent concealment precludes class certification. There is authority which holds that the common questions with regard to fraudulent concealment predominate over individual questions of knowledge and due diligence. *See e.g., Fisher Brothers v. Mueller Brass Company*, 102 F.R.D. 570, 579 (E.D.Pa. 1984) (common questions as to the alleged concealment of the conspiracy by defendant and co-conspirators predominate over inquiries as to knowledge of various class members); *In re Fine Paper Antitrust Litigation*, 82 F.R.D. 143, 154 (E.D.Pa. 1979) ("key" question on issue of fraudulent concealment relates to whether defendants successfully concealed existence of alleged conspiracy), *aff'd*, 685 F.2d 810 (3d Cir.1982), *cert. denied*, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983); *In re Independent Gasoline Antitrust Litigation*, 79 F.R.D. 552, 559 (D.Md.1978) (common question of whether defendants attempted to conceal alleged conspiracy predominates over individual questions); *In re*

---

5. Fed.R.Civ.P. 23(c)(1) reads in relevant part:
 An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.
 Fed.R.Civ.P. 23(c)(4)(A) reads in relevant part:

 [A]n action may be brought or maintained as a class action with respect to particular issues ... and the provisions of this rule shall then be construed and applied accordingly.

*Plywood Anti–Trust Litigation,* 76 F.R.D. 570, 586 (E.D.La.1976) ("crucial" common questions on fraudulent concealment issue related to whether defendants successfully concealed existence of alleged conspiracy).

However, there is other authority which asserts the opposite. *See e.g., Krehl v. Baskin–Robbins Ice Cream Co.,* 78 F.R.D. 108, 123–24 (C.D.Cal.1978) (denying class certification since issue of fraudulent concealment in antitrust case required individualized proof); *In re Anthracite Coal Anti-trust Litigation,* 78 F.R.D. 709, 719–20 (M.D.Pa.1978) (common issues do not predominate over individual issues when fraudulent concealment alleged).

■ We are in agreement with the former position, particularly when, as here, the individual issues of each class member's knowledge and diligence present no real problems of manageability. *See In re Independent Gasoline,* 79 F.R.D. at 559. Defendants' concerns were aptly addressed by the court in *In re Plywood Anti–Trust Litigation, supra,* which asserted that in private treble damages actions under Rule 23(b)(3) courts "routinely" made provisions for separate determinations of damages in which individual claims and defenses on statute of limitations could be adjudicated. *In re Plywood Anti–Trust Litigation,* 76 F.R.D. at 586. The court then held:

> Accordingly, we conclude that class action determination is not undermined on predominance grounds by problems that some plaintiff may have with the statute of limitations. Those problems can be determined in due course in the separate trials on damages, should the case reach that stage.

*In re Plywood Anti–Trust Litigation,* 76 F.R.D. at 586 (quoting *Ungar v. Dunkin' Donuts of America,* 68 F.R.D. 65, 140 (E.D.Pa.1975), *rev'd on other grounds,* 531 F.2d 1211 (3d Cir.1976)). We also conclude that the common issues regarding fraudulent concealment presented in the instant case predominate over individual ones, particularly when the adjudication of individu-

al issues does not pose great management difficulty.[6]

We turn next to defendants' contention that no common issues of fact exist between Westchester County and the various municipalities within it because Westchester County's bidding process is different from that utilized by the municipalities. However, we agree with plaintiff that irrespective of any differences in the bidding process, a common issue of fact exists as to whether there was a single conspiracy among defendants to fix prices and allocate customers for the sale of asphalt and whether, like other class members, Westchester County purchased asphalt from defendants at non-competitive prices as a result of the alleged conspiracy.

Finally, as required by Rule 23(b)(3), we assess whether a class action is superior to other available methods for "the fair and efficient adjudication of the controversy." Rule 23(b)(3) requires that we consider pertinent matters such as: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating litigation in the particular forum; and, (4) the difficulties likely to be encountered in the management of a class action.

There is no dispute as to whether there is other litigation commenced by or against other class members. There is also no issue regarding the possibility of litigation in another forum. We have already spoken to the issue of management. As to the interest of putative class members individually controlling the prosecution of separate actions, under Rule 23(c)(2) there is adequate protection for any proposed class member who wishes to "opt-out" of the class action.

### Conclusion

For the reasons articulated, we grant plaintiff Town of New Castle's motion for

---

**6.** Moreover, it is significant that defendants concede that "nearly all," but not completely all, of plaintiff's damages would be time-barred absent

a showing of fraudulent concealment. *See* Defendant's [sic] Joint Brief in Opposition to Plaintiff's Motion for Class Certification at 18.

class certification. The class shall consist of the County of Westchester and all cities, towns, villages and other local governmental agencies which purchased asphalt or asphalt and its application directly from one or more of the defendants at any time during the period from January 1, 1970 through December 31, 1985.

However, pursuant to Rule 23(c)(1), (c)(4) and (d) we grant class certification conditionally and will alter or modify this Order should circumstances indicate modification or amendment would be prudent.[7] We further direct plaintiff to submit to the court within 14 days of the date of this Order a proposed notice to members of the class pursuant to Fed.R.Civ.P. 23(c)(2).

SO ORDERED.

---

**7.** Fed.R.Civ.P. 23(d) reads in relevant part:
In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring ... notice be given ... to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation to be fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on representative parties or on intervenors; (4) requiring all pleadings to be amended ...; (5) dealing with similar procedural matters.