**Jessica WEIGMANN, Marcella Nelson, and Brook Hedick, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**GLORIOUS FOOD, INC., Defendant.**

No. 95 Civ. 8712 (DC).

United States District Court,
S.D. New York.

Nov. 6, 1996.

American Civil Liberties Union Foundation by Sara L. Mandelbaum, Women's Rights Project, New York City, Spriggs & Johnson, by Kent Spriggs, Tallahassee, FL, for Plaintiffs.

Berger Stern & Webb, LLP by Peter R. Stern, Jonathan A. Olsoff, New York City, Proskauer Rose Goetz & Mendelsohn, LLP by Bettina B. Plevan, New York City, for Defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

In this Title VII action, plaintiffs allege that defendant catering company discriminated, and continues to discriminate, against its female "cater waiters" by limiting their hours and wages and by not assigning them certain work at private parties. Plaintiffs seek to enjoin defendant's allegedly discriminatory policies and to recover back pay and compensatory and punitive damages. Plaintiffs now move pursuant to Fed.R.Civ.P. 23 for an order certifying this action as a class action.

### STATEMENT OF THE CASE

#### A. Summary of Facts

Plaintiffs Jessica Weigmann ("Weigmann"), Marcella Nelson ("Nelson"), and Brook Hedick ("Hedick") (collectively, "plaintiffs") are three women who previously worked as cater waiters for defendant Glorious Food, Inc. ("Glorious Food"). Plaintiffs allege that defendant discriminated against them on the basis of their gender; they seek to represent all female cater waiters employed by Glorious Food from June 21, 1993 through the date when relief is finally granted in this action.

#### B. Plaintiffs

##### 1. Jessica Weigmann

Weigmann began to work for Glorious Food in 1991 as a member of its wait staff. As a cater waiter, Weigmann performed all tasks required by defendant at all of the Glorious Food parties to which she was assigned. At all relevant times, with the exception of a short period of time surrounding Weigmann's wedding and a death in her family, Weigmann maintains that she was willing, able, and desirous of additional work assignments. Furthermore, Weigmann asserts that she was dependent upon Glorious Food to provide her with work so that she could earn a living.

Weigmann alleges that due to Glorious Food's policies of giving men more job assignments and more hours, of virtually excluding women from certain parties, and of placing a limit on the percentage of women waiters at other parties, her annual wages were lower than they would have been had she been a man. Specifically, Weigmann earned $9,253.90 in 1994 and $4,645.25 in 1995. Weigmann further alleges that on or about July 12, 1994, an employee at Glorious Food showed her a "party roster" that was used by defendant to record information concerning the assignment of waiters. The standard party roster contained an entry that asked: "Women okay?," followed by the choices "Yes" or "No."

On another occasion, Weigmann was the only woman assigned to work at a party. She was assigned to work as the female bathroom attendant and was told that she was not allowed on the floor while the guests were present or being served.

Lastly, Weigmann alleges that she has spoken with several other current and former Glorious Food female cater waiters who, while supportive of the lawsuit, are fearful of retaliation if they join the class as named plaintiffs.

##### 2. Marcella Nelson

The second named plaintiff, Nelson, worked as a cater waiter for Glorious Food from May 1986 to in or about September 1995. She also worked as manager of payroll for approximately two and one-half years until she resigned on April 29, 1996. Nelson alleges that she was subjected to Glorious Food's company-wide policy and practice of preferring male waiters based solely on their gender. For example, Nelson alleges that she was not assigned to private parties as often as she would have been had she been a male, even though she had completed the

company's private party seminar. In addition, Nelson was paid only $17.00 per hour for performing duties as a co-captain, whereas male co-captains were paid $23.00 per hour. Furthermore, Nelson was told on six separate occasions that she was being taken off of certain parties because she was a woman. Nelson maintains that she was willing and able to perform more work than was given to her. She also asserts that she was dependent on her work at Glorious Food to earn a living.

Further, Nelson states that, in her capacity as payroll manager, she worked closely with the Personnel Director, Sandra Maritire, the account executives, and other members of management. Based on her personal knowledge of defendant's policies and practices in assigning jobs, Nelson attests that it is the standard operating procedure of Glorious Food to give men preference over women in assigning jobs. Nelson also states that Glorious Food intentionally limits the number of women who are allowed to take the private party seminar and the Captain's seminar.

Lastly, Nelson alleges that the discrimination has continued up until at least December 1995, when defendant instructed her to hire eighty male waiters for a large wedding.

### 3. Brook Hedick

The third named plaintiff, Hedick, worked as a cater waiter for Glorious Food from in or about August 1992 through January 30, 1995. Hedick asserts that she has been discriminated against by defendant on the basis of her gender. She states that she was ready, willing, and able to perform more work than was assigned to her by defendant and was dependent upon Glorious Food to provide her with work to earn a living. Hedick's gross earnings for 1993, 1994, and 1995 were $403.75, $323, and $233.75, respectively.

Hedick alleges that soon after she was hired she requested to be enrolled in the private party seminar, but was never afforded the opportunity to take the seminar or to work at private parties.

### 4. Gwendolyn Carlton

In further support of this motion, plaintiffs have also submitted the affidavit of Gwendolyn Carlton, a putative class member who wishes to be joined as a named plaintiff. Carlton worked as a waiter for Glorious Food from in or about September 1994 until June 1996.

Carlton alleges that on several occasions she was told that she had to work twice as hard as the men did, that when the current lawsuit is over she would no longer be allowed to work at certain parties, and that her work had to be perfect because she was a woman. In 1995, Carlton earned $17,061.03 from Glorious Food. Carlton asserts that, although she earned more than most of the female, and many of the male, waiters at Glorious Food, her earnings could have been substantially more had she been a man.

Furthermore, Carlton alleges that in March 1996 one of the male captains informed her that he had requested that she be allowed to work at two parties, but his request was denied because she was a woman. Carlton also states that she was ready, willing, and able to work more hours and events than she was given.

### C. Prior Proceedings

Plaintiffs filed this action on October 12, 1995 and now move for class certification. After plaintiffs commenced this lawsuit, the New York State Attorney General conducted an investigation of Glorious Food. Upon completing the investigation, the Attorney General and Glorious Food entered into an Assurance Agreement (the "Agreement"). The Agreement requires that defendant perform several affirmative steps to remedy any alleged discriminatory practices, without requiring defendant to admit to any wrongful practices or policies. The Agreement also requires defendant to reimburse the Attorney General for the expense of the investigation, in the amount of $40,000, without providing plaintiffs with any damages. The Agreement does not contain any objective criteria to be used for assigning waiters to jobs and seminars.

## DISCUSSION

### A. Standard for Class Certification

To be eligible for class certification, plaintiffs must first demonstrate that all of the requirements of Fed.R.Civ.P. 23(a) have been satisfied. *See Comer v. Cisneros,* 37 F.3d 775, 796 (2d Cir.1994); *accord Marisol A. ex rel. Forbes v. Giuliani,* 929 F.Supp. 662, 689 (S.D.N.Y.1996). Second, plaintiffs must show that the punative class falls within one of the three categories set forth in Rule 23(b). *Comer,* 37 F.3d at 796. Plaintiffs in the instant case seek certification under Rule 23(b)(2).

▉ Although I must conduct a rigorous inquiry in determining whether the requirements of Rule 23 have been satisfied, *see General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982), I must accept plaintiffs' allegations as true and refrain from conducting an examination of the merits when determining the propriety of class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). Furthermore, because courts are given discretion to tailor the scope of the class later in the litigation, liberal consideration of the requirements for class certification is permitted in the early stages of litigation. *See Woe ex rel. Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir.), *cert. denied,* 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984).

### B. Rule 23(a)

Rule 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

#### 1. Numerosity

▉ Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); *see Jane B. ex rel. Martin v. New York City Dep't of Social Servs.,* 117 F.R.D. 64, 69–70 (S.D.N.Y.1987). In determining whether the numerosity requirement has been satisfied, a court should consider the circumstances surrounding the case to determine if joinder is impracticable, rather than simply looking at the numbers. *See Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38, 40 (S.D.N.Y.1990); *see also Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir.1968). Nonetheless, the size of the class is one factor to be considered under Rule 23(a)(1). *Town of New Castle,* 131 F.R.D. at 40. Numbers between 100 and 1,000 generally satisfy the numerosity requirement. *Id.* at 40; *cf. Boucher v. Syracuse Univ.,* No. 95 Civ. 620, 1996 WL 328441, at *7 n. 7 (N.D.N.Y. June 12, 1996) (difficulty of joining as few as 40 class members may give rise to presumption that joinder is impracticable). In the instant case, plaintiffs have submitted evidence that there are 240 putative class members. This number, if accurate, will satisfy the numerosity requirement because joinder of 200 individual plaintiffs would be highly impracticable.

▉ Defendant challenges the adequacy of plaintiffs' evidence regarding the number of putative class members. Plaintiffs need not prove the exact number of class members, however, but may "rely on reasonable inferences drawn from the available facts." *Jackson v. Foley,* 156 F.R.D. 538, 542 (E.D.N.Y. 1994) (quoting *McNeill v. New York City Housing Auth.,* 719 F.Supp. 233, 252 (S.D.N.Y.1989)); *accord Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."). Plaintiffs have submitted four affidavits of putative class members, as well as affidavits from a male and a female manager of Glorious Food, attesting to the widespread discriminatory practices of Glorious Food. Plaintiffs have also submitted evidence of the 240 putative class members' names and earnings for the relevant time period. From this evidence, it is reasonable to infer that there are 240

putative class members. I hold that the estimate of 240 class members satisfies the numerosity requirement conditionally. As this litigation proceeds, however, plaintiffs may be required to "proffer sufficient evidence on the numerosity issue ... to prevent decertification." *Boucher*, 1996 WL 328441, at *4.

### 2. *Commonality*

█ Defendants do not challenge class certification on commonality grounds, and it is clear that the putative class members share at least one common question of law or fact, for example, whether defendant has treated similarly situated male and female cater waiters differently on the basis of their sex. *See Marisol A.*, 929 F.Supp. at 690 ("[A] single common question may be sufficient to satisfy this rule.") (citation omitted); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir.1987), *cert. denied sub nom. Pinkney v. Dow Chem. Co.*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988). Thus, Rule 23(a)(2) is satisfied.

### 3. *Typicality*

█ Rule 23(a)(3) also requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The primary purpose of Rule 23(a)(3) is "to ensure that 'the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.'" *Marisol A.*, 929 F.Supp. at 691 (quoting *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir.1994)). "There is no requirement that the factual basis for the claims of all members of a purported class be identical." *Wilder v. Bernstein*, 499 F.Supp. 980, 992 (S.D.N.Y.1980); *see also Robidoux*, 987 F.2d at 936–37. Rather, a putative class will satisfy Rule 23(a)(3) if each member's claim arises from the same course of conduct, *Marisol A.*, 929 F.Supp. at 691, and "each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936 (citation omitted).

█ Here, Weigmann, Nelson, Hedick, and Carlton allege that they have been injured by defendant's company-wide policy and practice of discriminating against women in the assignment of work, hours, and pay. Thus, the claims and defenses of Weigmann are typical of the claims and defenses of the class they seek to represent.

Defendant argues that Weigmann fails to satisfy the typicality requirement of Rule 23(a)(3) for two reasons: (1) Weigmann completed the private party seminar and was eligible to work at private parties, unlike many of the unnamed putative class members, and (2) Weigmann viewed her employment with Glorious Food as "full-time," while many of the other putative class members viewed their employment as being "part-time."

The fact that Weigmann has taken the private party seminar, while other potential class members have not, does not preclude a finding that Rule 23(a)(3) has been satisfied. Plaintiffs allege that defendant has discriminated against female waiters by not allowing them to work at private parties and by limiting the number of women who are allowed to take the private party seminar in the first place. Therefore, although Weigmann's injury appears to be more direct, all of the putative class members allege that defendant has discriminated against them because of their gender.

Likewise, the fact that Weigmann may view her job as full-time while other plaintiffs regard their jobs as part-time does not render her claims atypical. Full-time and part-time employees alike can be denied more hours and pay, and, although they may suffer different damages, their claims are essentially the same. Moreover, plaintiffs have submitted an affidavit from a former manager of payroll at Glorious Food who states that defendant does not distinguish between full-time and part-time waiters. (Nelson Aff. ¶ 8).

In sum, the slight differences in the factual circumstances giving rise to Weigmann's claims do not render her claims atypical. *See Robidoux*, 987 F.2d at 936 (citation omitted) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought

to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.") (citations omitted); *Marisol A.,* 929 F.Supp. at 691 (district courts are "empowered to certify a class despite the unique circumstances of each plaintiff as long as the relief sought is based on the same legal theory.") (citing *Jane B.,* 117 F.R.D. at 70). Accordingly, because the named class members and the putative class seek to recover from Glorious Food based on the same allegedly discriminatory conduct, the typicality requirement is satisfied.

### 4. *Adequacy of Representation*

■ To determine whether the requirement of adequacy of representation has been satisfied, courts must look to whether "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Evidence that relates to the requirements of typicality and commonality can reflect on the adequacy of representation requirement. *Falcon,* 457 U.S. at 158 n. 13, 102 S.Ct. at 2371 n. 13; *Non-Traditional Employment for Women v. Tishman Realty & Constr. Co.,* No. 88 Civ. 4620 (RLC), 1989 WL 101940, at *4 (S.D.N.Y. Aug. 30, 1989).

■ To establish adequacy of representation, plaintiffs must show (1) that plaintiffs' counsel is competent to handle the case and (2) that there are no conflicts of interest among the class members. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed sub nom. Hart Holding Co. v. Drexel Burnham Lambert Group, Inc.,* 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); *accord Marisol A.,* 929 F.Supp. at 692. Defendant does not challenge the competency of counsel; hence, I will address only the defendant's challenges to the named plaintiffs as adequate representatives.

Defendant challenges all three named plaintiffs as well as Gwendolyn Carlton, a prospective named plaintiff. I will deal with each challenge separately.

### a. *Jessica Weigmann*

■ Defendant contends that Jessica Weigmann is not an adequate representative because, as a former Glorious Food employee, she has no interest in obtaining injunctive relief against defendant. This argument is rejected for several reasons. First, regardless the relief sought, Weigmann's theory of liability is the same as the other members of the class. Second, Weigmann may wish to return to Glorious Food some day, thus making injunctive relief appropriate for her. *Cf. Cutler v. Perales,* 128 F.R.D. 39, 45 (S.D.N.Y. 1989) ("Even if the named plaintiff has been granted [the relief requested], she still maintains a continuing interest in the subject of this litigation. It is quite probable that the named plaintiff might find herself in similar situations with [defendants] in the future."). Lastly, Weigmann, by originally coming forth as the sole named plaintiff, has demonstrated a desire to have the courts rectify the asserted injustices at Glorious Food regardless of whether she ever returns to work there. Accordingly, I find that Weigmann will be an adequate class representative.

### b. *Marcella Nelson*

Defendant challenges Nelson on the grounds that it has a defense unique to her claim; namely, because Nelson was working as both a cater waiter and as a manager in the payroll department, Nelson did not desire more work as a waiter because she would be taxed more heavily. Even if this were true, the only effect it would have would be to reduce the amount of damages Nelson would receive if plaintiffs prevailed at trial. Therefore, defendant's objections to Nelson are rejected.

### c. *Brook Hedick*

■ Defendant also challenges Brook Hedick because it believes that Hedick has defenses unique to her claim. First, defendant asserts that Hedick could not have been injured because she did not desire more work. In support of this allegation defendant points to the fact that Hedick had become pregnant and had a child during the two-year period at issue. Again this argument relates only to the issue of damages.

The second challenge relating to Hedick concerns a levy that was placed on her wages by the Internal Revenue Service. Defendant argues that Hedick had informed Glorious Food that she no longer desired to work if the government was going to garnish her wages. Even if Hedick made those comments, it appears from the documents submitted by defendant, *i.e.,* the levy form, that the levy was not issued until April 1995, after Hedick had ended her employment. Again, this defense would not be relevant to liability, but, rather, would go to the issue of damages. If Hedick voluntarily stopped working due to the levy, then she would not be eligible for damages beyond the date when those statements were made. As defendant's arguments do not appear to present any unique defenses that threaten to become the focus of the litigation, *see Kline v. Wolf,* 88 F.R.D. 696, 700 (S.D.N.Y.1981), defendant's objections to Hedick as a class representative are rejected.

### d. *Gwendolyn Carlton*

Finally, defendant challenges Gwendolyn Carlton on the grounds that she has not been candid with the Court, that she earned more money than most male and female waiters, and that she later accepted a job that required her to work fewer hours, contradicting her asserted desire for more work from Glorious Food.

■ A potential representative's honesty is a factor to be weighed in determining whether a named plaintiff will be an adequate representative of the class. *See In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 325 (E.D.N.Y.1982). Defendant asserts that Carlton has not been candid with the Court because she represented to the Court that she was a current employee of Glorious Food on June 4, 1996, when in fact she resigned two days later. This argument is rejected. Carlton was a current employee when she made the statement; thus the statement was not false. Further, defendant has not presented any evidence that Carlton knew that she would be resigning in two days and purposely concealed that fact from the Court.

Nor is it of consequence that Carlton earned more money than most of the male waiters, and perhaps all of the female waiters. So long as Carlton could have earned more money had she been a man, her claim is still viable regardless of the amount that she actually earned.

Finally, the fact that Carlton took a job that requires her to work fewer hours does not preclude a finding that she desired additional hours when she was at Glorious Foods. It is possible, for example, that her new job pays more per hour, enabling Carlton to work fewer hours. Accordingly, defendant's objections with respect to Carlton are rejected.

For the reasons stated above, the named plaintiffs will make adequate class representatives.

### C. *Rule 23(b)(2)*

In addition to satisfying the requirements of Rule 23(a), plaintiffs must also demonstrate that this case falls within one of the categories set forth in Rule 23(b). Plaintiffs assert that their class should be certified under Rule 23(b)(2), which provides for certification if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....

Fed.R.Civ.P. 23(b)(2).

■ Rule 23(b)(2) was intended to assist litigants seeking wide-spread institutional reform through injunctive and/or declaratory relief. *See Marisol A.,* 929 F.Supp. at 692 (citing *Baby Neal,* 43 F.3d at 58–59). In fact, several courts have found that Rule 23(b)(2) will generally be satisfied in cases where injunctive relief is sought and would benefit the entire class. *See, e.g., Boucher,* 1996 WL 328441, at *3; *Brown v. Giuliani,* 158 F.R.D. 251, 269 (E.D.N.Y.1994); *Non-Traditional Employment for Women,* 1989 WL 101940, at *4 ("Since defendants have allegedly acted 'on grounds generally applicable to the class' and the court finds injunctive relief appropriate should plaintiffs prevail on their claims, plaintiffs have satisfied Rule 23(b)(2)."); *Jane B.,* 117 F.R.D. at 71.

The instant case poses the very situation contemplated by Rule 23(b)(2). Plaintiffs, if successful on the merits, would be entitled to injunctive and/or declaratory relief to ensure that the alleged gender-based discrimination ceases, and this relief would advance the interests of the entire class. As discussed above, even former employees have an interest in obtaining injunctive relief that would enable them to return to Glorious Food, if they so choose.

■ In the instant case, however, defendant claims that plaintiffs have not satisfied the requirements of Rule 23(b)(2) because the Agreement renders plaintiffs' claims for injunctive relief moot, thereby making final injunctive relief inappropriate. Although courts have allowed a class to be certified under Rule 23(b)(2) even when the alleged wrongful conduct has been remedied, *see, e.g., Rodgers v. United States Steel Corp.,* 69 F.R.D. 382, 386–87 (W.D.Pa.1975), the Second Circuit has generally rejected class certification under Rule 23(b)(2) when there is nothing left to be remedied by an injunction or the claims for money damages predominate. *See, e.g., Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968) ("Subsection (b)(2) was never intended to cover cases ... where the primary claim is for damages, but is applicable only where the relief sought is exclusively or predominantly injunctive or declaratory."); *Ebije v. The City of New York,* No. 95 Civ. 1779 (DC), 1996 WL 191732, at *1 (S.D.N.Y. April 21, 1996) (class certification under Rule 23(b)(2) denied where challenged law had already been declared unconstitutional, rendering claims for injunctive relief moot).

Nonetheless, I find that Rule 23(b)(2) has been satisfied. The Agreement fails to fully remedy defendant's actions, and thus injunctive relief remains the predominate claim for relief. *See Rodgers,* 69 F.R.D. at 387–88 (class certification appropriate under Rule 23(b)(2) despite consent decree because court may ultimately award different injunctive relief); *see also Gelb v. American Tel. & Tel. Co.,* 150 F.R.D. 76, 78 (S.D.N.Y.1993) (court granted class certification under Rule 23(b)(2) for injunction claims despite fact that plaintiffs also asserted claims for money damages). Although the Agreement is extensive, it fails to establish any objective criteria for defendant to use when assigning waiters to jobs and seminars. In addition to implementing objective criteria for the assigning of waiters to jobs and seminars, there may be a need for individualized injunctive relief as to some of the class members.

Furthermore, plaintiffs are not in privity with the Attorney General, and therefore are not precluded, as private citizens, from instituting a suit, despite the Agreement executed by the Attorney General. *See Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201, 1203 (2d Cir.1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1893, 1902, 36 L.Ed.2d 390 (1973); *accord Black Grievance Comm. v. Philadelphia Elec. Co.,* 79 F.R.D. 98, 105 (E.D.Pa. 1978). Although plaintiffs' counsel initially informed the Attorney General of Glorious Food's alleged discriminatory practices, plaintiffs, in their affidavits, state that they did not take part in the Attorney General's investigation. Furthermore, plaintiffs' counsel has submitted a letter that she had sent to the Attorney General expressing her dissatisfaction with the investigation and findings. (Mandelbaum Aff., Exh. B). Finally, the Attorney General required Glorious Food to reimburse the Attorney General's office in the amount of $40,000, but did not require that defendant pay damages to plaintiffs, indicating that plaintiffs' interests were not fully addressed. Accordingly, "this case is one which properly seeks an extension of the relief sought and obtained" by the Attorney General, *Williamson,* 468 F.2d at 1204, and class certification is appropriate.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is granted.