## KANSAS CITY LIFE INS. CO. v. NIPPER.

No. 25103.   Nov. 19, 1935.

Keaton, Wells, Johnston & Barnes, Frank W. McAllister, and Bond & Bond, for plaintiff in error.

Paul D. Sullivan and Arthur J. Marmaduke, for defendant in error.

PER CURIAM.   Zonna Maze Nipper commenced this action against the Kansas City Life Insurance Company, a corporation, on June 4. 1932, for the sum of $1,500, which sum she claimed was due her as double indemnity on a certain life and accident policy taken out by her husband, Henry C. Nipper.

The parties will be referred to herein as plaintiff and defendant, as in the court below.

She alleged in her petition that the policy of insurance was issued to her husband, Henry C. Nipper, by the defendant on May 3, 1922; that the policy was an ordinary life policy in the sum of $1,500, and which carried a double indemnity clause to the effect that:

"If the death of the insured under this policy should result from the effects of an injury through external, violent and accidental causes * * * and such death occur within ninety days from the happening of such injury the amount payable hereunder will be three thousand dollars, provided however this double indemnity benefit will not apply in the case of  death by suicide * * * or death as a result of the intentional act of another."

That on December 26, 1924, the insured received accidental injuries from which he died on January 29, 1925; that shortly after the death of the insured the defendant

paid plaintiff the sum of $1,500 through Leo Curtis, a banker at Byars, Tex.; that the plaintiff did not know she was entitled to double indemnity at the time she settled with defendant, but that the said Leo Curtis was agent of the defendant and well knew at the time of the settlement that plaintiff was entitled to double indemnity, and held back from plaintiff said information and thereby defrauded plaintiff, which fraud was not discovered by the plaintiff until the month of May, 1932.

This action was filed in the district court of Stephens county, Okla., on June 4, 1932.

The evidence in the case tended to show that the insured, on the 26th day of December, 1924, got into a drunken brawl, at a country dance near Randlett, Okla., in which a number of men took part, and during the melee the insured was struck in the head by one Neal Smith with a neck yoke, from which injuries he died on January 29, 1925.

There is no dispute in the evidence that the death of Nipper was due to the blow struck by Smith, and that Smith was trying to hit someone and do him bodily harm at the time the blow was struck. There is some dispute, however, as to whether he intended to strike Nipper or the man with whom Nipper was fighting. There was evidence both ways, which makes this a question for the jury to decide.

1-4. It is contended by the defendant that the death of the insured was due to the "intentional act of another;" that for this reason no double indemnity could be recovered, and that the demurrer to plaintiff's evidence should have been sustained and a verdict should have been directed for the defendant.

It is argued on behalf of defendant that the death of Nipper was the result of the intentional act of Smith, in that it was undisputed that the swinging of the neck yoke by Smith was intentional and for the purpose of striking someone, and even if the death of Nipper was not intended by Smith, the swinging of the neck yoke was at least an intentional act and plaintiff could not recover double indemnity. They argue that "in the case at bar, by the plain terms of the policy, it is the blow that must be intentional, not the result."

On the other hand, it is argued by plaintiff that both the blow and the result must be intentional in order to exempt the defendant from double indemnity. A large number of cases are cited by counsel for both sides, most of which discuss cases where the policy contains the clause, "Injuries intentionally inflicted," which is not the language of the policy under consideration here. The phrase to be construed in this case is, "death as the result of the intentional act of another."

This exact phrase has been before the courts and has frequently been construed, but the courts are by no means in accord as to its meaning. In the case of National Life Insurance Company of the United States v. Coughlin, 72 Colo. 440, 212 P. 486, the Supreme Court of Colorado held, by a divided court, that no recovery could be had under a policy containing this clause, where the insured was shot and killed near the premises of another, who fired a revolver into the darkness to frighten any loiterer, but did not shoot to kill. Such shooting was declared to be intentional, though the result was not intended and could not have been foreseen.

The Colorado court appears, however, to be on the minority side of this question. In the case of Olson v. Southern Surety Co., 201 Iowa, 1334, 208 N. W. 213, the Supreme Court of Iowa had under consideration this same clause. The setting there seems to have been similar to the case at bar, a drunken brawl in which several people were fighting, and the insured undertook to separate two of them and in the mix-up he was found unconscious and died a short time later. In syllabus 13, the court said:

"To bring insurer within exception as to injuries sustained by insured from intentional act of another, it must be conclusively shown that blows which inferentially fell on insured, who intervened in a drunken brawl, were intended for him."

In the body of the opinion the court said:

"As stated, the burden of proof on this question was upon the defendant. The presumption (though not conclusive) is that the injuries, though inflicted by another, were not intentional. The burden is upon the defendant to show that they were intentional. Allen v. Traveler's Association, 143 N. W. 574, 163 Iowa, 217, 48 L. R. A. (N. S.) 600; Caldwell v. Iowa State Traveling Men's Association, 136 N. W. 678, 156 Iowa, 327. The evidence respecting the cause, nature, and character of the injuries is quite indefinite. It is a reasonable conclusion that they were suffered in the course of a drunken brawl, in which the insured intervened between Morris and Laura Wold. It is not conclusively shown that the blows, which inferentially fell on the in-

sured, were intended for him. Such proof is essential to bring the defendant within the exception. Robinson v. Hawkeye Commercial Men's Association, 171 N. W. 118, 186 Iowa, 759; Union Accident Co. v. Willis, 145 P. 812, 44 Okla. 578, L. R. A. 1915D, 358; Cooper v. National Life Ins. Co., 253 S. W. 465, 212 Mo. App. 266; 1 C. J. 442."

In the case of Cooper v. National Life Insurance Co., 212 Mo. App. 266, 253 S. W. 465, the Missouri Court of Appeals reached the same conclusion as the Iowa Supreme Court in construing this phrase, and expressly disagreed with the reasoning and results arrived at in the Coughlin Case, where the court said:

"Within a clause in an accident insurance policy excepting a liability for injuries caused by the intentional act of another, an 'act' does not consist alone of the power exerted, but includes the immediate effect of such power, so that the act of shooting insured consisted, not only of the power which propelled the bullet from the weapon, but also of the striking of plaintiff with the bullet, and the act was not intentional, even if the weapon was intentionally fired, if it was intended thereby to shoot another."

In this case a colored man was attempting to shoot a colored woman. The woman grabbed the insured and placed him between her and the man who was attempting to shoot, but the gun was fired, striking the insured, though it was clear there was no intention to shoot the insured. The court held that this was not an intentional act of another within the meaning of this phrase in the insurance policy.

In the case of Brooks v. Continental Casualty Co. (La. App.) 128 So. 183 the Court of Appeals of Louisiana held that the act of a deputy sheriff who ordered two men suspected of robbery to halt, and when they started to run, he fired several times in order to stop them, or at the most to cripple them, but one of the bullets struck one of the men in a vital spot and he was killed, was not the intentional act of a third person within the meaning of that phrase in the insurance policy.

In Nerrow v. Pacific Mutual Life Insurance Co. (Mo. App.) 294 S. W. 97, it is said by the editors in 56 A. L. R. 692:

"It seems to have been conceded that, if the person who killed the insured did not intend to kill him, but only did so while protecting himself from an assault by the insured, the company would be liable under an accident policy exempting it from liability for injuries sustained by the insured by reason of the intentional act of any person.

"And it was a question for the jury as to whether the person who killed the insured intended to kill or injure him."

Under the majority holding of the courts, it seems clear to us that the phrase, "intentional act" means more than intentional delivery of a blow or the intentional firing of a shot, but the aim of the blow or the shot must be at the insured, and the intention must be to injure the insured, though in the case of the death of the insured, it would seem that the death need not be intended, though where death results, the blow or shot would be intentional if the purpose was simply to injure the insured.

The burden of proof was on the defendant, after the plaintiff had shown that the death of the insured was due to external, violent, and accidental means, to prove by a preponderance of the evidence that such death was due to the intentional act of another. This, we hold, the defendant failed to do in this case.

■ It is next contended that the cause of action in this case was barred by the statute of limitations. The evidence showed that the insured died on January 29, 1925, and that this suit was brought on June 4, 1932, more than seven years after the death of the insured.

Under section 101, O. S. 1931, this cause of action, being upon a contract in writing, would be barred by the statute of limitations within five years from the death of Nipper. This same section further provides:

"An action for relief on the ground of fraud, the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

This section further provides that an action may be brought within two years after the discovery of the fraud.

It is contended by the plaintiff that the statute of limitations was tolled in this case by reason of the fact:

(1) That Leo Curtis was agent of the defendant at the time of the settlement with plaintiff, when she was paid the $1,500.

(2) That Curtis, as such agent, fraudulently concealed the plaintiff's right to double indemnity, and that plaintiff did not learn of her rights in this regard until a few weeks before she brought suit.

■ Was Curtis the agent of the defendant at the time the $1,500 was paid on this policy?

The evidence on this point was that Cur-

tis was an officer of the First National Bank at Byars, Tex.; that he was an agent of the defendant company at the time the policy in question was written in May, 1922, and that the policy was left with him by the insured, and after the death of Nipper and the filing of plaintiff's claim under the policy, the defendant sent the check for $1,500 to Curtis' bank for delivery; that Curtis notified the plaintiff to come in and get her money; that he told her the $1,500 was all she had coming and delivered the check to her, upon her signing certain papers, which were returned to the company.

Plaintiff testified, without objection, that Curtis was the agent of defendant at the time of settlement. Curtis testified that he was the agent of the defendant at the time the policy was written in May, 1922, but was not the agent of the company in 1925, when settlement was made with plaintiff, and that another man in the bank was the local agent for the defendant at that time.

The burden was on plaintiff to show that Curtis was agent of defendant at the time the settlement was made on the policy in question, but when it was shown by the evidence and admitted that Curtis was the agent of defendant in May, 1922, then the burden shifted to the defendant to show the discontinuance of this relation. An agency, when shown to have existed, will be presumed to have continued in the absence of proof of its revocation. 21 R. C. L. 822.

■ Under these circumstances, was the agency of Curtis a question of law for the court or question of fact for the jury? In 21 R. C. L. 822, the rule is stated tersely:

"It is within the province of the court to determine whether, under an ascertained state of facts, an agency did exist; but it is for the jury to determine the existence of facts sufficient to constitute agency." Southern Surety Co. v. Gilky-Duff Hdw. Co., 166 Okla. 84, 26 P. (2d) 144.

In view of the fact that Curtis had been agent for defendant; that his bank was agent of the defendant in the delivery of the $1,500 check to plaintiff; that there was some evidence that Curtis owned the bank and that he handled the delivery of the check and secured the execution of the necessary papers as evidence of such delivery, and that plaintiff testified he was the agent of defendant at the closing of the deal, we do not believe this question of the agency of Curtis was so clear and indisputable as to make it a matter of law for the court, but rather a question of fact for the jury, under

proper instructions from the court. Instructions 7 and 8 given by the court read:

"In this connection you are instructed that the plaintiff relies upon the acts, conduct, and representations of one Leo Curtis, in her allegations and proof of fraud upon the part of the defendant. In this connection you are instructed that, before the defendant would be bound by the acts, conduct, and representations of the said Leo Curtis, you must find by a preponderance of the evidence that at the time a payment on the policy in question was made to the plaintiff, the said Leo Curtis was the agent of the defendant, Insurance Company.

"If you find from the evidence, and by a preponderance thereof, that the insurance policy herein was originally written through the agency of the said Leo Curtis, that upon the receipt of said policy the deceased left the same with the said Curtis and that it remained with the said Curtis until the death of the deceased; that said Curtis was a man of experience in business affairs; that he knew of the double indemnity clause contained in said policy and that after the death of the insured, Henry C. Nipper, he called the plaintiff to his bank for the purpose of settling same for the insurance company, and that the plaintiff had never seen said insurance policy and did not know that the double indemnity clause was contained therein; that the plaintiff was inexperienced in business affairs; but that she was well acquainted with the said Leo Curtis and had confidence in the said Leo Curtis, and by reason thereof, relied solely upon his representations and that Leo Curtis knew of the manner in which the deceased met his death, and knew or should have known that the plaintiff at least had a right to contend for the double indemnity included in said policy, and the said Leo Curtis failed and neglected to reveal the fact of the double indemnity clause in said policy to the plaintiff, but told her all she had coming under said policy was the $1,500 and plaintiff relied upon this statement of said Leo Curtis, if you find he made the statement, in that event the plaintiff would be excused from filing her suit until such time as she learned of the double indemnity feature contained in said policy, or within two years from the time she learned that the policy contained a provision for double indemnity."

Instruction No. 7 tells the jury that before the defendant would be bound by the acts of Curtis, they must find that he was the agent of defendant at the time payment was made on the policy in question.

Instruction No. 8 tells the jury that if they find certain enumerated facts, most of which are either clearly proven or admitted, then "plaintiff would be excused from filing her suit until such time as she learned of

the double indemnity feature contained in said policy, or within two years from the time she learned that the policy contained a provision for double indemnity."

In drawing these conclusions the court assumed two facts: (1) That Curtis was the agent of defendant at the time of settlement; and (2) that he was guilty of fraudulent concealment, such as would toll the statute of limitations.

This was a clear invasion of the province of the jury. The questions of agency and fraud were questions of fact for the jury. This instruction is reversible error, not only because it invades the province of the jury, in effect finding for them the facts of agency and fraud, but assuming that there was no diligence required on the part of plaintiff to ascertain and protect her own rights.

■ But, assuming that Curtis was agent of defendant, does the evidence disclose any fraud on his part or that degree of fraud that will toll the statute of limitations? If he was the agent of defendant, as plaintiff contends, then it was his duty to guard and protect the interest of defendants and not the interest of plaintiff. His only duty toward plaintiff was to refrain from any affirmative act of fraud toward her. It was not his duty to watch out for all rights of plaintiff and inform her of them. Plaintiff says he did not tell her of the double indemnity clause in the policy. This clause appeared in the policy in bold type and anyone who could read could see it. Was it then the duty of Curtis to call express attention to this cause or any other particular clause in this policy? There was no evidence that Curtis attempted to keep the policy away from plaintiff or prevent her from reading same. Both she and her husband had consented that the policy should be left with Curtis. Under these circumstances, she will not be heard to say she closed her eyes to her rights and then charge fraud against the other party to the contract, solely because he kept silent as to her rights. But plaintiff says Curtis knew of her right to recover $3,000 on that policy and failed to tell her. Assuming for the sake of argument that it was his duty to tell her this if he knew it to be a fact, did he know it to be a fact?

The question of whether the double indemnity clause in this policy is applicable to the exact set of facts connected with the killing of Henry C. Nipper is one of the principal issues in this case, and one on which wise men might reasonably differ. Curtis decided under the facts as related to

him that she was not entitled to $3,000, but only $1,500, which the company had sent to him to deliver. If this was an honest and reasonable belief on his part, then it was not fraud on his part to say so.

In Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okla. 239, 131 P. 174, this court has laid down the rule as follows:

"Fraudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals material facts, and thereby prevents a discovery of his wrong, or the fact that a cause of action has accrued against him, is not allowed to take advantage of his own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud.

"The mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute. There must be **something more; some actual artifice to prevent knowledge of the facts; some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry."**

■ The next question is. Did the court properly submit to the jury a correct statement of the law as to plaintiff's duty? The court told the jury in effect that if plaintiff did not know of her rights and that Curtis did and failed to tell her, this was fraud on the part of Curtis, and hence of defendant. This is not a correct statement of the law. It was the duty of plaintiff to exercise some degree of diligence and make some effort to learn her rights and not close her eyes and depend solely upon her adversary informing her of her rights.

Plaintiff testified that she could read. The double indemnity clause was set forth in the policy in bold type and she could have seen this if she had taken the trouble to open the policy lying before her and read it, and if she did not understand the double indemnity clause, she should have consulted someone primarily interested in her cause rather than someone who was primarily interested in the cause of the insurance company.

The rule is well stated in 37 C. J. 971:

"The general statement of the rule as to the effect of a fraudulent concealment of a cause of action, where such rule is applicable, is that when a party against whom a cause of action exists in favor of another, by fraud or concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered or **might have been discovered by the exercise of diligence."**

And again, at page 974:

"For the purposes of the statute of limitations, if the means of knowledge exists and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry, and the limitation on the general rule, often expressed in the statute, is that plaintiff cannot set up successfully a fraudulent concealment of his cause of action if **his failure to discover it is attributable to his own negligence,** especially where there is no trust relation between the parties."

For the errors pointed out, this cause is reversed, with instructions to the trial court to grant a new trial in accordance with the views herein expressed.

The Supreme Court acknowledges the aid of Attorneys Chas. W. Pennel, Hayes McCoy, and J. Robert Ray in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Pennel and approved by Mr. McCoy and Mr. Ray, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and GIBSON, JJ.,concur.