## LOYAL PROTECTIVE INSURANCE CO. et al. v. SHOEMAKER.

No. 26406.     Sept. 8, 1936.

Rehearing Denied Jan. 9, 1937.

Edwin A. Ellinghausen, for plaintiffs in error.

Speakman & Speakman, for defendant in error.

PHELPS, J. On September 26, 1917, Lem Shoemaker took out a mutual benefit accident policy with one of the defendant insurance companies, naming his son, the plaintiff, as beneficiary. The insured died from an accident on September 9, 1921. The plaintiff immediately telegraphed the insurance company, and received reply to this effect:

"We find that your father's policy has not been in force since July 15, 1921. Your father allowed the policy to lapse on that date by failing to pay the premium due."

The evidence reveals that the plaintiff, acting in reliance upon such representation, pressed the matter no further, and it was not until 30 days prior to the filing of this suit, on May 9, 1932, while going through the contents of an old trunk in which some of his father's effects had been stored, that he discovered certain written instruments which indicated that the policy had not lapsed when his father died. Those facts will be discussed when we reach that part of this opinion pertaining thereto. The plaintiff recovered a verdict and judgment on the policy, and the defendant appeals.

Defendant contends that the evidence was not sufficient to toll the statute of limitations. In support of the validity of the judgment the plaintiff relies upon the rule that fraud of the defendant in concealing or misrepresenting facts necessary to maintenance of plaintiff's cause of action, overtly made and relied upon by plaintiff, will suspend the running of limitations until discovery of the fraud. Countering then to this argument, the defendant asserts that the means of discovering the fraud was always in the possession of plaintiff, in that plaintiff by a diligent search could have discovered the letter and receipt in his father's effects at a much earlier date than he did discover them, and that therefore by plaintiff's own negligence in failing to discover this evidence he is estopped to contend that the defendant is estopped to claim the bar of the statute.

Under proper instructions, which are not questioned, the jury must have believed that there was an intentional misleading of the plaintiff, by the defendant's untrue representation in advising plaintiff that the policy had lapsed. Fraudulent concealment constitutes an implied exception to the statute of limitation, and a party who wrongfully conceals material facts, and thereby prevents a discovery of his wrong, and the fact that a cause of action has accrued against him, is not allowed to take advantage of his own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud. Mere failure to disclose such material facts is not sufficient to prevent the running of the statute; but when there is something more than mere failure to disclose, when there is some actual artifice or some affirmative act of concealment, or some misrepresentation which induces the other party to inaction, or to forego inquiry, the guilty party may not cover up the harm he has thus wrought, by aid of the statute of limitations. Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okla. 239, 131 P. 174; Brookshire v. Burkhart, 141 Okla. 1, 283 P. 571. In discussing this distinction we said in Liberty Nat. Bank of Weatherford v. Lewis, 172 Okla. 103, 44 P. (2d) 127:

"Had the bank and its representatives simply kept quiet about the matter, and had neither affirmed nor denied that the payment had been received, it would probably not be a case of willful misleading, but when by its own fraudulent conduct the defendant contributed to the delay in the filing of this suit it cannot be heard to say that said delay must bar the plaintiff's right of recovery."

The general principle running through these cases is that one may not take advantage of his own wrongful conduct. Though the plaintiff's own negligence will often bar his recovery, it will not usually do so if

it is induced by the defendant, for in the latter case it is not the plaintiff's own negligence alone, but is a negligence born of the defendant's active wrong, which incepted it. This principle is not restricted to the effect of fraud on the running of limitations, but is carried into all branches of the law where fraud touches. For instance, in Dusbabek v. Bowers, 173 Okla. 53, 43 P. (2d) 97, 47 P. (2d) 141, it was held that the negligence of the signer of an instrument the execution of which had been induced by fraud, and which negligence was caused by the fraud, was not available as a legal weapon to the party guilty of the fraud. It is the same here, and in the cases cited supra. Conceding that the plaintiff was negligent, the inference was reasonable enough that the defendant itself wrongfully caused such negligence, and it follows should not now be allowed to take advantage of it.

Defendant also complains of the trial court's overruling its demurrers to the petition and the evidence, and refusal to direct a verdict in its favor. We have examined the petition; the trial court was correct in overruling it. The other assignments resolve themselves into the question of whether the evidence was sufficient to create an issue of fact, determinative of the case, and that question in turn depends entirely upon whether there is evidence to support the evident finding that the premium payment made by insured on March 15, 1921, covering the premium due on April 15, 1921, was a semiannual payment and not a quarterly payment. The insured having died on September 9, 1921, if the April 15th premium payment was for six months in advance, then the policy was in force when insured died. On the other hand, there being no cash surrender value, extended insurance or grace period involved, if the April 15th premium was only a quarterly premium, it carried the insurance no longer than July 15th, and the policy had lapsed prior to the death. The defendant's contention is that the jury's finding that this payment was a semiannual premium payment, as distinguished from a quarterly premium payment, is based wholly on conjecture.

The evidence on this issue is both direct and circumstantial. That for the plaintiff is almost entirely circumstantial. We review the evidence in its entirety, both pro and con:

(a) The policy itself provided for quarterly premiums, due in advance on the 15th days of January, April, July, and October.

(b) Found in deceased's effects, pinned together, were a letter from the defendant company and a premium receipt. The letter was undated, but was typewritten on the company's stationery. Affixed thereto was the rubber stamp signature of the general manager, and the dictating initials of one proven to have been in charge of such correspondence. The letter was addressed to the insured and the body of it read:

"We find that you have been paying your premiums six months in advance, and believe it is your wish to continue doing so. A great many of the Brothers find it still more convenient to pay by the year. A year's premium on your policy is $24.00 and we believe you would be still better pleased to make the payment annually."

The premium receipt read:

"March 15, 1921. This is to advise you that the April 15th, 1921, premium on your policy has been paid and properly credited to you."

Plaintiff testified that the undated letter was received between November 26, 1920, and September 9, 1921, the date of insured's death, and to facts in support thereof, and that it was found pinned to the April 15, 1921, receipt.

(c) During all of this period the insured was earning a good income and was not beset with any heavy expenses.

(d) Certain officials of the company testified by deposition that the records of the company revealed that the payment was on the quarterly premium due on April 15, 1921; that the policy lapsed on July 15, 1921; that because the April 15th receipt did not state otherwise, it meant that it was for a quarterly premium and not a semiannual premium. This was objected to, as not the best evidence.

(e) The insurance company did not offer in evidence the actual record of the payment, although it was and is admitted by the company that it does have the actual record. And though plaintiff offered to vacate his judgment if the company at any time within 60 days thereafter should produce such record, showing the premium to have been for only the $6 quarterly premium, such record has never been produced. We list this as a part of the evidence, for reasons hereinafter discussed.

There are cases where no one fact in evidence supports the finding made on a controverted question, yet in which the combined and cumulative effect of all the facts, considered circumstantially, lends to the finding more probability than would be deserved by any other hypothesis. In arriving at our opinion that this is an example of that kind

of case we have given the evidence careful consideration and, it must be admitted, have been impressed with the fact that plaintiff's evidence is very meager. It is very probable that without the aid of the conclusion to be drawn from defendant's failure to produce decisive evidence within its power to produce, the plaintiff's evidence would be insufficient to sustain the verdict.

While we have no inclination to bolster beyond its deserts the evidence adduced by plaintiff, let us at least extend it the benefit of what logical force it does possess: a custom of doing business, between insured and defendant, consisting of making semiannual payments of premiums, is shown to have existed. The "premiums" (plural according to the letter) were being made by insured on the semiannual basis. At least two of these had therefore been made, covering a year. Since the letter was received after November 26, 1920, it had relation, in describing such custom, to some period of time not far from April 15, 1921, which was less than four months later. This does not prove that the premium payment made on March 15, 1921, for April 15, 1921 (one month in advance of the date upon which it had to be paid), was a six-months premium payment, and we do not hold that it was direct evidence of that fact. In the absence of other evidence it would not be enough. Viewed retrospectively, however, it did establish that a custom of doing business on the semiannual premium plan was in vogue between the parties at a time shortly before the April 15th payment was due. If as a physical fact the letter was found pinned to the April 15th receipt (which we must accept as true for present purposes), who can deny that this has at least circumstantial significance? We repeat, however, that if plaintiff's recovery were based entirely on this, it would savor too much of the conjectural to affirm.

But there is much more in the case than that. There is a well-recognized rule of evidence, sanctioned by the experience and common sense of men, that the failure of a litigant to produce decisive evidence which it is within his power to produce, authorizes a conclusion (in many cases called a presumption) that the evidence if produced would have been unfavorable to such litigant. Saddler v. Watkins, 169 Okla. 279, 36 P. (2d) 760; Striker v. Billingsley, 169 Okla. 145, 36 P. (2d) 474; A., T. & S. F. Ry. Co. v. Davis & Young, 26 Okla. 359, 109 P. 551; Johns v. Edwards, 120 Okla. 85, 250 P. 1012. Here it is admitted that a payment of some amount was made, one month in advance, for the April 15, 1921, premium. It is shown that there existed a business custom of paying semiannual premiums. Was the business custom followed in the particular instance? Who knew? No one but the defendant, who admitted that it had the record which would have settled this all important question, which record would have affirmatively shown whether the payment was $6 or $12. Should we excuse the failure to produce this evidence as merely an oversight of council, the fact still remains that plaintiff offered (in the light of the admission that the record existed) to vacate his judgment if at any time within 60 days the defendant should produce the record verifying the conclusions of the defendant's deposition witnesses. How easy it would have been to end this lawsuit by producing the admittedly existing record is self-evident. Certainly in the face of such an offer the defendant would not have failed to produce the record unless either (a) no such record existed, thus belying the testimony of the deposition witnesses, or (b) the record did in fact reflect that the premium payment was $12 for semiannual instead of quarterly payment.

This court has taken the position that under circumstances such as these the failure to produce the evidence has the effect of probative value for the other side of the case. See authorities in Atchison, T. & S. F. Ry. Co. v. Davis & Young, 26 Okla. 359, 109 P. 551. It is said in 10 R. C. L. 889:

"Where a party relies on parol evidence of a fact, instead of producing written evidence thereof in his possession, it ought to require much less evidence to defeat him than if he had no written evidence which he could have produced. And a weak case may be strongly corroborated by the opposite party's failure to produce or account for documents that would remove all doubt."

It was within the power of the defendant here to produce a document which would have removed all doubt. On this point 22 C. J. 115 sums up the prevailing rule in this language:

"Where it is apparent that a party has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, it may be presumed that if the more satisfactory evidence had been given it would have been detrimental to him and would have laid open deficiencies in, and objections to, his case which the more obscure and uncertain evidence did not disclose."

In Nichols on Applied Evidence this is said:

"Where a party introduces weaker and less satisfactory evidence, the trial court may presume that the omitted evidence would be unfavorable."

If the failure to produce such evidence is unavoidable, it should create no impression unfavorable to the party at all. And no strong argument could logically be based on such omission if the failure to produce it is in truth and fact attributable to mere oversight. But where the real and best evidence does exist, and the party is given every opportunity to produce it, and a reasonable time in which to do so, and still fails, the proper conclusion in the light of ordinary human experience is very evident.

As stated above, such failure has a probative value as evidence itself, and it is to be added to the evidence of the opposite party. We think it is reasonable to say that the weight thereof, considered together with and added to such reasonable inferences as were deducible from the plaintiff's evidence, not overlooking the cumulative and combined effect thereof, constituted on the whole a situation wherein the least that could be said is that the conclusions of reasonable men therefrom might differ, and therefore we hold that there was sufficient evidence to go to the jury on this question.

It is also contended that the court erred in admitting the letter in evidence. In our judgment this assignment need not be discussed at length. It was above the rubber stamp signature of the manager, dictated by one whose duties were customarily those of handling the matters involved herein in the usual course of business, written on the stationery of the defendant company, and evidently received by the insured. See Globe Automatic Sprinkler Co. v. Braniff, 89 Okla. 105, 214 P. 127.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and WELCH, JJ., concur.