2008 OK 67

**Rhonda MASQUAT, Appellee,**

v.

**DAIMLERCHRYSLER Corporation, Appellant.**

No. 104,971.

Supreme Court of Oklahoma.

July 1, 2008.

Rehearing Denied Oct. 27, 2008.

Terry W. West, Bradley C. West, Gregg W. Luther; West Law Firm, Shawnee, OK, T. Christopher Tuck; Richardson, Patrick, Westbrook & Brickman, LLC, Mt. Pleasant, SC, R. Douglas Gentile; Douthit, Frets, Rouse, Gentile & Rhodes, Kansas City, MO, for Appellee.

George D. Davis; Walls Walker Harris & Wolfe, PLLC, Oklahoma City, OK, Raymond M. Kethledge; Bush Seyferth Kethledge & Paige, PLLC, Troy, MI, James F.B. Daniels; McDowell Rice Smith & Buchanan, Kansas City, MO, for Appellant.

COLBERT, J.

¶ 1 This interlocutory appeal challenges the trial court's certification of a class of plaintiffs who assert breach of warranty claims based on an alleged defect in the steering mechanism of certain vehicles manufactured by DaimlerChrysler Corporation (Defendant). The trial court's order certifying the class is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Plaintiff and class representative, Rhonda Masquat, brought this action asserting that LH platform vehicles contain a defect in the power rack and pinion steering system. These vehicles were sold as the Dodge Intrepid, the Eagle Vision, the Chrysler New Yorker, the Chrysler LHS, the Chrysler Concord, and the Chrysler 300M during model years 1993 through most of 2001.

¶ 3 Plaintiff alleges that shortly after production and sale of the LH vehicles began, Defendant began to receive reports from consumers of steering related problems with the entire LH family of vehicles. After unsuccessful attempts to remedy the problem, Defendant eventually introduced a newly designed bolt, which attached the inner tie rods to the rack and pinion steering gear, in late calendar year 2000 to keep the steering systems from failing. Plaintiff's theory is that the cure and repair to the problem developed by Defendant was never provided to already-produced LH platform vehicles, and consumers were not informed that the fix was available and that the repair should be made.

¶ 4 Plaintiff purchased a 1994 Dodge Intrepid on June 21, 1999. She replaced the attachment bolts and the inner tie rod bushings on October 11, 2000, shortly before the bolt change implemented by Defendant. Plaintiff filed this action on January 28, 2005, asserting that, by its failure to provide the bolt fix, Defendant breached its express and implied warranty obligations to the class consisting of Plaintiff and others similarly situated and that Defendant should be required to compensate the class for the cost of the bolt fix and steering-related repairs.

¶ 5 Defendant answered with a motion to dismiss asserting that the claim of Plaintiff and the claims of most of the proposed class members were time-barred. Plaintiff was ordered to amend her petition to address the defense. Plaintiff's amended petition asserted that the applicable statute of limitations was tolled based on "Defendant's active concealment" of the alleged defect in the steering system.

¶ 6 On May 22, 2007, the trial court held a hearing on Plaintiff's motion for class certification and certified the following class:

All entities and adult persons domiciled or residing in the fifty (50) states of the United States of America and the District of Columbia who currently (as of May 21, 2007) own at least one model year 1993–2001 (through week 30 of model year 2001 production) automobile marketed by DA-

IMLERCHRYSLER Corporation as the Dodge Intrepid, the Eagle Vision, the Chrysler New Yorker, the Chrysler LHS, the Chrysler Concorde and the Chrysler 300M, or who have paid for repair costs to the steering system tie rods on any of the aforementioned vehicles. Excluded from the class are (a) defendant and all directors, officers, agents and employees of defendant; (b) judges and judicial personnel; (c) any entity or person who timely opts out of this proceeding; (d) any person who has suffered personal injury from the steering system failures alleged herein; and (e) any entity or person who has given a valid release of the claims asserted in this suit.

1. Section 2023 provides:
A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
1. The class is so numerous that joinder of all members is impracticable;
2. There are questions of law or fact common to the class;
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. The representative parties will fairly and adequately protect the interests of the class.
B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:
1. The prosecution of separate actions by or against individual members of the class would create a risk of:
   a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
   b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
   a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

The trial court decided against including former owners who did not incur any repair costs related to the steering system tie rods. The trial court also decided there should be a cap on the amount of compensation paid to class members. That court later determined that "[t]he cap for the bolt fix remedy for current owners shall be $310.00 and the cap for repairs to the steering system by reason of the absence of a bolt remedy shall be $400.00."

## ANALYSIS

¶ 7 Class action is a procedural device governed by title 12, section 2023, of the Oklahoma Statutes.[1] It promotes judicial econo-

   b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
   c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
   d. the difficulties likely to been countered in the management of a class action.
C. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.
1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.
2. In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that:
   a. the court will exclude him from the class if he so requests by a specified date,
   b. the judgment, whether favorable or not, will include all members who do not request exclusion, and
   c. any member who does not request exclusion may, if he desires, enter an appearance through his counsel.
Where the class contains more than five hundred (500) members who can be identified through reasonable effort, it shall not be necessary to direct individual notice to more than five hundred (500) members, but the members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to

my and efficiency by providing an avenue for consistent determinations of the claims of similarly situated plaintiffs. It permits courts to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

■ ¶ 8 "A trial court's class certification order is reviewed for abuse of discretion." *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 5, 81 P.3d 618, 622 *cert. den. sub. nom. DaimlerChrysler Corp. v. Ysbrand*, 542 U.S. 937, 124 S.Ct. 2907, 159 L.Ed.2d 812 (2004). "If the record does not demonstrate that the requisites for class action have been met, the trial court has abused it[s] discretion." *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 9, 164 P.3d 1028, 1032. Moreover, this Court "review[s] de novo whether the trial court applied the correct legal standard to grant cer-

tification." *Scoufos v. State Farm Fire & Cas. Co.*, 2001 OK 113, ¶ 1, 41 P.3d 366, 367. "If the trial court incorrectly decided a question of law in certifying the class, reversal will be ordered." *Id.*

■ ¶ 9 "The party who seeks certification has the burden of proving each of the requisite elements for class action." *Harvell*, 2006 OK 24, ¶ 10, 164 P.3d at 1032. These elements include numerosity, commonality, typicality, and adequacy of representation. Okla. Stat. tit. 12, § 2023(A). In addition, because the trial court in this matter certified the class under section 2023(B)(3), Plaintiff must prove that common issues predominate over individual ones, and that class litigation is superior to other available methods of resolving the controversy.

■ ¶ 10 In considering a motion to certify a class, the trial court is not to resolve the merits of the claims or defenses asserted. *See Harvell*, 2006 OK 24, ¶ 11, 164 P.3d at 1032. Rather, "the Oklahoma Supreme Court subscribes to the modern view that a

bring the notice to the attention of such members, provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class members who are being notified. Members to whom individual notice was not directed may request exclusion from the class at any time before the issue of liability is determined, and commencing an individual action before the issue of liability is determined shall be the equivalent of requesting exclusion from the class.

3. The judgment in an action maintained as a class action under paragraphs 1 or 2 of subsection B of this section, whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under paragraph 3 of subsection B of this section, whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in paragraph 2 of subsection C of this section was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

4. When appropriate:

   a. an action may be brought or maintained as a class action with respect to particular issues, or

   b. a class may be divided into subclasses and each subclass treated as a class. The provisions of this section shall then be construed and applied accordingly.

D. ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this section applies, the court may make appropriate orders:

1. Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

2. Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

3. Imposing conditions on the representative parties or on intervenors;

4. Requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; and

5. Dealing with similar procedural matters. The orders may be combined with an order under Section 16 of this act and may be altered or amended as may be desirable from time to time.

E. DISMISSAL OR COMPROMISE. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Okla. Stat. tit. 12, § 2023 (2001 & Supp.2007).

court may consider the merits [but only] insofar as they inform what individual issues might be a part of the adjudicatory process." Steven S. Gensler, *Civil Procedure: Class Certification and the Predominance Requirement under Oklahoma Section 2023(B)(3)*, 56 Okla. L.Rev. 289, 316 (2003). Class certification "may be conditional," as is the order in this matter, and it "may be altered or amended before the decision on the merits." Okla. Stat. tit. 12, § 2023(C)(1). Therefore, "[t]he pragmatically correct action, in the face of a close question as to certification, has been said to sustain certification because if it develops later during the course of the trial that the order is ill-advised, the order is always (prior to judgment on the merits,) subject to modification." *Perry v. Meek*, 1980 OK 151, ¶ 19, 618 P.2d 934, 940.

▪ ¶ 11 Defendant's challenge to the trial court's class certification order centers on whether issues common to the class predominate or whether a lack of uniform law and factual variations in the claims of individual class members preclude class certification. Defendant urges that individual questions of the applicable law and factual variations in the claims of class members will "overwhelm the court and jury, making class-wide determinations of the claims impracticable." Plaintiff counters stating that common class-wide issues predominate because one state's law applies to the breach of warranty claims of the class and one state's law applies to the statute of limitations defense to those claims. She also urges that the issues and evidence concerning the claims and defenses in this litigation are essentially uniform across the class.

▪ ¶ 12 There is no dispute that this Court's decision in *Ysbrand* requires the ap-

plication of the substantive law of Michigan to the breach of warranty claims in this matter. *See Ysbrand*, 2003 OK 17, ¶¶ 12–16, 81 P.3d at 625–26. Here, as in *Ysbrand*, a class of plaintiffs is pursuing breach of warranty claims against the Michigan manufacturer. Under the "most significant relationship" test applied in *Ysbrand*, Michigan law applies. *See Id.* Furthermore, as in *Ysbrand*, the factual issues associated with the breach of warranty claims appear to be essentially uniform across the class. *See Id.* ¶¶ 19–21, 81 P.3d at 627. In any event, as this Court noted in *Ysbrand*, "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* ¶ 21, 81 P.3d at 627 (quoting *Lobo Exploration Co. v. Amoco Prods.*, 1999 OK CIV APP 112, ¶ 17, 991 P.2d 1048, 1055). Thus, the predominance requirement is satisfied as to the breach of warranty claims presented in this matter.

¶ 13 The hotly contested issue in this matter is whether common issues predominate over individual issues in regard to Defendant's statute of limitations defense. Defendant asserts that the breach of warranty claims of most of the class members are facially time-barred by the statute of limitations found at section 2–725(2) of the Uniform Commercial Code.[2] A determination of which state or states' limitations period applies is pivotal in determining whether the legal issue can be uniformly decided across the class.

¶ 14 Plaintiff asserts that the statute of limitations was tolled because Defendant actively concealed information regarding the

---

**2.** The uniform provision states that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Further, "[a] cause of action accrues when the breach occurs" and "a breach of warranty occurs when tender of delivery is made." Unif. Com.Code § 2–725(1) & (2), 1C U.L.A. 566 (2004).

The official comment to the provision states that its purpose is "[t]o introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and pro-

viding needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred." The drafters' goal of uniformity in adopting a four-year statute of limitations has been somewhat undercut by the decision of several state legislatures to omit the provision, reference the limitation period to existing state law, or extend the limitation period to five or six years. *See, e.g.*, id. at 566–68.

steering system tie rods from the class. Plaintiff emphasizes that she is not pursuing a common law fraud claim, nor is she bringing an independent tort claim for fraudulent concealment. In *Ysbrand*, the choice of law analysis on a common law fraud claim determined that it would require that the "law of 51 jurisdictions" be applied, "an overwhelming burden which would make the class unmanageable and a class action determination of that claim inappropriate." 2003 OK 17, ¶ 18, 81 P.3d at 627. Plaintiff argues that the choice of law determination as to the applicable statute of limitations points to only one state's law, Michigan, because the statute of limitations is "part and parcel" of the warranty claims she asserts.

¶ 15 Defendant, on the other hand, asserts that the choice of law rule applicable to this Court's determination of the proper limitation period, and thus the appropriate requirements for tolling that provision, must be found in Oklahoma's "borrowing statute" which provides that "[t]he period of limitation applicable to a claim accruing outside of this state shall be that prescribed either by the law of the place where the claim accrued or by the law of this state, whichever last bars the claim." Okla. Stat. tit. 12, § 105 (2001). Defendant argues that application of the borrowing statute will require the comparison of Oklahoma's limitation period for a warranty claim to the warranty limitation period of each state in which a class member resides. Defendant further argues that variations in the tolling requirements for the warranty limitation periods of each state will make class treatment of its statute of limitations defense completely unmanageable because common issues of law will not predominate.

■ ¶ 16 The issue of the applicable statute of limitations is controlled by the choice of law provision found in Oklahoma's borrowing statute found at section 105 of title 12 of the Oklahoma Statutes. This provision was adopted in 1965 as part of the Uniform Statutes of Limitations on Foreign Claims Act,

1965 Okla. Sess. Laws 102–103 (codified as amended at Okla. Stat. tit. 12, §§ 104, 105, 107, & 108 (2001 & Supp.2007) ).[3] Because Michigan law applies to the warranty claims of the class, this Court is directed by the borrowing statute to compare the limitation period under Michigan law to that of Oklahoma and apply the one which "last bars" the claims.

¶ 17 Michigan adopted the uniform version of section 2–725 of the Uniform Commercial Code and therefore "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued...." Mich. Comp. Laws § 440.2725(1). Oklahoma's provision is identical except that Oklahoma substituted the word "five" for the word "four." *See* Okla Stat. tit. 12A § 2–725(1) (2001). Thus, Oklahoma's provision "last bars" the warranty claims. Because the Oklahoma limitation period and the tolling provisions of Oklahoma law apply to the warranty claims of each class member, there will be no need to address the law of each state to determine whether the limitation period has been tolled. However, this Court must examine the legal and factual issues surrounding the limitation period, not to determine whether the limitation period has been tolled, but rather, to determine whether common questions of law and fact predominate.

■ ¶ 18 Oklahoma's statute of limitations for warranty claims provides that it does not displace the common law concerning tolling of the statute. *See* Okla. Stat. tit. 12A, § 2–725(4) ("This section does not alter the law on tolling of the statute of limitations...."). As Oklahoma law has long recognized:

> Fraudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals material facts and thereby prevents a discovery of his wrong, or the fact that a cause of action has accrued against him, is not allowed to take advantage of his own wrong

---

**3.** Oklahoma, Pennsylvania, and West Virginia are the only states to have adopted the uniform provision. In 1970, Oklahoma amended the uniform provision substituting "last" for "first." 1970 Okla. Sess. Laws 34. This Court has observed that now "its operation is in effect the reverse of most 'borrowing statutes'" which choose the law of the jurisdiction which has the shorter limitation period. *Reinhard v. Textron, Inc.*, 1973 OK 19, ¶ 6, 516 P.2d 1325, 1327.

by pleading the statute, the purpose of which is to prevent wrong and fraud.

*Waugh v. Guthrie Gas, Light, Fuel & Improvement Co.,* 1913 OK 42, ¶ 0, 131 P. 174, Syl. No. 2. Further:

> The mere failure to disclose such material facts is not sufficient to prevent the running of the statute; but when there is something more than mere failure to disclose, when there is some actual artifice or some affirmative act of concealment, or some misrepresentation which induces the other party to inaction, or to forgo inquiry, the guilty party may not cover up the harm he has thus wrought by aid of the statute of limitations.

*Loyal Protective Ins. Co. v. Shoemaker,* 1936 OK 491, ¶ 0, 63 P.2d 960, Syl. No. 1. "One relying on fraudulent concealment to toll the statute of limitations must not only show that he did not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts." *Kansas City Life Ins. v. Nipper,* 1935 OK 1127, ¶ 0, 51 P.2d 741, 742, Syl. No. 9. "[I]f the means of knowledge exist and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry" and a plaintiff cannot successfully assert fraudulent concealment in answer to the defense of the statute of limitations. *Id.* ¶ 35, 51 P.2d at 747.

¶ 19 Defendant argues that predominance is defeated by the asserted need to question each class member individually as to whether the class member exercised reasonable diligence in learning of the allegedly concealed defect. Defendant speculates that some class members "might well have been more diligent than others" and that "[s]ome class members may have known more about the alleged defect than others, based on their own experience, or the experience of people they know, or conversations with dealer personnel...." This Court's decision in *KMC Leasing v. Rockwell–Standard Corp.,* 2000 OK 51, 9 P.3d 683, is cited for the proposition that the issue of whether the class members exercised reasonable diligence can never be determined on a class-wide basis.

¶ 20 In *KMC,* this Court affirmed the trial court's refusal to certify a proposed class of aircraft owners who asserted products liability and other claims including a claim of fraud. This Court determined that common questions did not predominate over the need for individual fact finding because the differing terms of hundreds of non-uniform sales contracts would "require the trial court to analyze fraud issues under differing laws of numerous jurisdictions." *Id.* ¶ 26, 9 P.3d at 691. Thus, it was the need to apply the law of numerous jurisdictions which defeated predominance in *KMC* just as that same need defeated predominance as to the fraud claim asserted in *Ysbrand. See Ysbrand,* 2003 OK 17, ¶ 18, 81 P.3d at 627. When, however, the problem of variations in applicable law are absent in a class action, this Court has permitted a fraud claim to proceed on a class-wide basis because the defendant's alleged fraud in failing to disclose information was based upon "the same or similar acts or omission for each class member." *See Burgess v. Farmers Ins. Co.,* 2006 OK 66, ¶ 17, 151 P.3d 92, 101.

¶ 21 As discussed, the need to apply the law of numerous jurisdictions is not found in this matter. However, the question remains as to whether Defendant's alleged concealment of the defect from the class members and their asserted lack of knowledge concerning the alleged defect are issues susceptible to determination as a common class-wide issue.

¶ 22 This Court has not been presented with the opportunity to address the class action predominance requirement in the context of an asserted fraudulent concealment exception to the statute of limitations. However, this Court has acknowledged that "[t]he essence of fraudulent concealment is knowledge in possession of the person committing the fraud." *Karriman v. Orthopedic Clinic,* 1973 OK 141, ¶ 17, 516 P.2d 534, 539 (quoting *Clinard v. Pennington,* 59 Tenn.App. 128, 438 S.W.2d 748, 753 (1968) (overruled on other grounds)). Thus, in this matter, the principal focus of Plaintiff's response to Defendant's statute of limitations defense will

be Defendant's conduct.[4]

¶ 23 "When representations are made or actions are taken on an individual basis, common questions will usually not predominate." 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 13:10, at 405 (4th ed.2002). However, "[w]here plaintiffs in a class action allege similar representations, the reliance issues may be presumed similar as well." *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 674 (S.D.Fla.1999) *citing Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 43 (S.D.N.Y.1990) (common questions pervade fraudulent concealment inquiry); *Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570, 579 (E.D.Pa.1984) ("The key question on the issue of fraudulent concealment will relate to whether the defendants successfully concealed the existence of the alleged conspiracy, and the proof of this contention will necessarily be common among the class members."); *In re Screws Antitrust Litig.*, 91 F.R.D. 52, 58 (D.Mass.1981)

4. The issue of whether the assertion of fraudulent concealment in response to a statute of limitations defense may be determined on a classwide basis has been addressed, almost exclusively it appears, within federal antitrust litigation. In such litigation, "[t]he majority of decisions addressing the issue hold that common questions concerning defendants' alleged concealment of an alleged conspiracy predominate over individual issues of each class member's lack of knowledge of the conspiracy and due diligence." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:38 (3d ed.2007) *citing In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir.2002) ("Key questions will not revolve around whether Appellees knew that the prices paid were higher than they should have been or whether Appellees knew of the alleged conspiracy among Appellants. Instead, the critical inquiry will be whether 'defendants successfully concealed the existence of the alleged conspiracy, which proof will be common among the class members in each class.' ") (citation & footnote omitted); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 488 (W.D.Pa.1999) ("[T]he issue of the fact of concealment is the predominating question, even though other individual questions are present, because the inquiry necessarily focuses on defendants' conduct, that is what defendants did, rather than what plaintiffs did."); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 520 (S.D.N.Y.1996) ("individual issues have been held to bar class certification only where they constitute the majority of Plaintiffs' proof of concealment"); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 385 (S.D.N.Y.1996) ("whether defendants actively concealed the alleged conspiracy clearly presents common questions of law and fact"); *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 615 (D.Kan.1995); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 699 (D.Minn.1995) ("The great weight of authority indicates that, absent exceptional circumstances, individual questions that arise in proving fraudulent concealment will not operate to prohibit certification of a class seeking certification to pursue a price-fixing conspiracy."); *Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 42-43 (S.D.N.Y.1990) (agreement with "authority which holds that the common questions with regard to fraudulent concealment predominate over individual questions of knowledge and due diligence."); *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 262, 266 (D.Minn.1989); *Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570, 579 (E.D.Pa.1984); *Abramovitz v. Ahern*, 96 F.R.D. 208, 218 (D.Conn.1982) (issue of whether fraudulent concealment would toll the statute of limitations was common to all class members); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 154 (E.D.Pa.1979) *aff'd*, 685 F.2d 810 (3d Cir.1982) ("The key question on the issue of fraudulent concealment will relate to whether defendants successfully concealed the existence of the alleged conspiracy, and the proof of this contention will necessarily be common among the class members."); *In re Plywood Anti-Trust Litig.*, 76 F.R.D. 570, 586 (E.D.La. 1976) ("fraudulent concealment issues appear to be generally common to all members in each of the classes").

"A minority of courts [disagree], holding that individual issues involved in establishing that the defendant fraudulently concealed its alleged misconduct to class members defeat predominance." McLaughlin, *supra* § 5:38 *citing Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 Fed.Appx. 296, 301[, 2004 WL 1245275] (5th Cir.2004) ("The issue of fraudulent concealment does not necessarily doom class treatment .... [but][i]t is ... a factor weighing against certification because it requires individualized determinations."); *Wagner v. La. Elec. Co.*, 99 F.R.D. 279, 289–90 (E.D.La.1983); *Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 547, 552 (D.Del.1979); *Township of Susquehanna v. H & M, Inc.*, 98 F.R.D. 658, 668 (M.D.Pa.1983); *In re Anthracite Coal Antitrust Litig.*, 78 F.R.D. 709, 719–20 (M.D.Pa.1978) (common issues do not predominate over individual issues when fraudulent concealment alleged); *Krehl v. Baskin–Robbins Ice Cream Co.*, 78 F.R.D. 108, 124 (C.D.Cal.1978) (proof of fraudulent concealment in antitrust case required "individualized proof as to the state of mind of each claimant, the ability of each claimant to have uncovered the fraud, and that extent of each claimant's efforts in doing so"); *Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 154 (E.D.Pa.1976) (limiting the plaintiff class to those who would not be required to rely on the doctrine of fraudulent concealment in order to prevail).

(question of fraudulent concealment common to class); *In re Indep. Gasoline Antitrust Litig.,* 79 F.R.D. 552, 559 (D.Md.1978) ("whether defendants attempted to conceal the alleged conspiracy is clearly a substantial question common to all class members" and because "common questions predominate over individual questions, ... proof of the subjective elements of fraudulent concealment will not present significant manageability problems").

¶ 24 In *Allapattah,* gasoline service station franchisees sought class certification in a breach of contract action against franchisor/seller based on the seller's promise that its wholesale price for fuel would be adjusted to offset a three per cent credit card processing charge it assessed. 188 F.R.D. at 675 n. 14. The question was whether seller's alleged fraudulent concealment of its breach of contract tolled the limitation period found at section 2–725 of the Uniform Commercial Code and whether the common issue regarding seller's actions predominated over issues of individual reliance. The *Allapattah* court certified the class noting that "[b]oth the evidence of [seller's] acts of concealment and the circumstances that would have triggered [buyers'] duty of due diligence would be common to the class." *Id.* at 675.

██ ¶ 25 In this matter, the common questions arising from Plaintiff's assertion of fraudulent concealment are (1) whether Defendant affirmatively concealed the alleged defect, and thus concealed a breach of warranty, and (2) whether the class members, by exercising due diligence, could have determined that a breach had occurred. Common to the class are both the evidence of the alleged acts of concealment and the evidence of whether knowledge of the alleged defect was readily available so as to put an ordinary prudent class member on inquiry.

¶ 26 Predominance does not require that there be no individual issues. It requires that the issues which can be answered as to all class members have more significance and weight than individual issues. Here, any question of variation in individual reliance is eclipsed by the common questions surrounding the allegation of fraudulent concealment. The critical inquiry will be whether Defen-

dant actively and successfully concealed the existence of the alleged defect from the class. The proof of the active concealment which Plaintiff alleges will be common to each class member.

¶ 27 Again, the mere presence of individual issues does not defeat predominance. For example, "[t]here is a consensus ... that the need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate." Newberg, *supra* § 13:10, at 404 (footnote omitted); *See, e.g., Burgess,* 2006 OK 66, ¶ 17, 151 P.3d at 101 ("Even though damages amounts may vary, common questions predominate where the acts or omissions are the same."). If the need to address individual issues arises as to whether due diligence would have revealed the alleged defect, those issues may be adjudicated at the same time and in the same fashion as any individual damages issues. *See In re Flat Glass Antitrust Litig.,* 191 F.R.D. 472, 489 (W.D.Pa.1999).

¶ 28 Common issues predominate in this matter as to the warranty claims and as to the alleged fraudulent concealment asserted in response to Defendant's statute of limitations defense. The primary issues to be resolved are common to each class member and Plaintiff's claim has the essential characteristics common to the claims of the class. Therefore, the class action requirements of commonality and typicality are satisfied. The class is made up of current and some past owners of certain LH platform vehicles, over two million of which were sold. There is no doubt the class is so numerous as to make joinder impracticable and therefore the numerosity requirement is met. Certification of the class in this matter is also superior to countless individual suits with the inevitable "inconsistent results" for parties similarly situated and the likely prospect that most claims will be left unpressed because the individual "claims are not substantial enough to support individual litigation." *Ysbrand,* 2003 OK 17, ¶ 25, 81 P.3d at 628. Finally, there is no dispute as to whether the class representative or her counsel will fairly and adequately protect the interests of the class.

¶ 29 This Court's review of the trial court's decision to certify the class reveals no abuse of discretion and no error in the legal standard applied in granting certification. The parties are reminded that the trial court's class certification order is "conditional and may be altered or amended before the decision on the merits." Okla Stat. tit. 12, § 2023(C)(1).

AFFIRMED.

CONCUR: WINCHESTER, C.J.; EDMONDSON, V.C.J.; HARGRAVE, KAUGER, WATT, TAYLOR, COLBERT, JJ.

CONCURS IN PART: OPALA, J.

OPALA, J., concurring in part.

¶ 1 This case presents several serious questions, which, if resolved against the plaintiff, would pose insuperable barricades to class certification. Oral argument would have been most helpful here to extend our attention to and familiarity with those prominent issues that escape today's concern and inclusion in the opinion's text. Because the court does not reach for analysis, discussion or resolution **all** of these important issues that stand submitted by the manufacturer's brief but received no place in the court's pronouncement, I concur in part of today's answer.